# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| KEVIN STEWART, on behalf of himself and all others similarly situated, | Case No. 3:17-cv-1266 |
| Plaintiff, | **Memorandum of Law in Support of Defendant's Motion to Dismiss** |
| v. | **Oral Argument Requested** |
| OCEAN STATE JOBBERS, INC. D/B/A OCEAN STATE JOB LOT, | |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT OCEAN STATE JOBBERS, INC. D/B/A OCEAN STATE JOB LOT'S MOTION TO DISMISS PLAINTIFF KEVIN STEWART'S CLASS ACTION COMPLAINT OR, IN THE ALTERNATIVE, MOTION FOR A MORE DEFINITE STATEMENT

**Ocean State Jobbers, Inc. d/b/a
Ocean State Job Lot**

By its attorneys,

*/s/ Kenneth Costa, Esq.*
Kenneth Costa (BBO# 27881)
Howard P. Goldberg (*pro hac vice admission pending*)
hgoldberg@mgmlaw.com
Shauna R. Twohig (*pro hac vice admission pending*)
stwohig@mgmlaw.com
MANION GAYNOR & MANNING LLP
125 High Street, 6th Floor
Boston, Massachusetts 02110
(T): 617-670-8800
(F): 617-670-8746

DATED: SEPTEMBER 11, 2017

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................... II

STATEMENT OF ISSUES ............................................................................................... III

RELEVANT AUTHORITY ............................................................................................... IV

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 4

STANDARD OF REVIEW ................................................................................................ 6

ARGUMENT ...................................................................................................................... 8

I.      PLAINTIFF'S NEW YORK LAW CLAIMS SHOULD BE DISMISSED BECAUSE HE HAS NOT PLAUSIBLY ALLEGED THAT ANY ASPECT OF OSJL'S SALE OF THE BATTERIES WAS MATERIALLY MISLEADING. ................................................................................. 8

II.     PLAINTIFF LACKS STANDING TO ASSERT CLAIMS UNDER THE LAW OF ANY OTHER STATE. ...................................................................................................................... 11

III.    PLAINTIFF FAILS TO STATE A CLAIM UNDER THE LAWS OF CONNECTICUT, MAINE, MASSACHUSETTS, NEW HAMPSHIRE, NEW JERSEY, RHODE ISLAND, AND VERMONT. ....... 14

        A.    *Plaintiff Fails to State a Claim Under Any of the States' Statutes* ...................... 16

        B.    *In the Alternative, OSJL Moves for a More Definite Statement With Respect to Plaintiff's Claims Under the Consumer Protection Laws of Rhode Island, Maine, New Hampshire, Vermont, Massachusetts, Connecticut and New Jersey.* ........... 24

CONCLUSION ................................................................................................................. 25

CERTIFICATE OF SERVICE ........................................................................................ 26

## STATEMENT OF ISSUES

(1)    Does Plaintiff's Complaint fail to plausibly allege sufficient facts to state a claim for relief under the New York consumer protection statute, N.Y. Gen. Bus. Law §§ 349-350, and the similar consumer protection statutes of Connecticut, Maine, Massachusetts, New Hampshire, New Jersey, such that Plaintiff's entire Complaint should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure?

Suggested Answer: YES

(2)    Does Plaintiff lack standing to bring claims under the consumer protection laws of Connecticut, Maine, Massachusetts, New Hampshire, New Jersey where Plaintiff does not reside in those states and has not suffered injury in those states?

Suggested Answer: YES

## <u>RELEVANT AUTHORITY</u>

<u>CASES</u>

AG Foods, Inc. v. Pepperidge Farm, Inc., 579 A.2d 69, 77 (Conn. 1990) ................................... 18

Albert v. Carovano, 851 F.2d 561, 572-573 (2d Cir. 1988) ........................................................ 7

Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991) ...................................... 2, 7

Anderson v. Hannaford Bros. Co., 659 F.3d 151, 159-60 (1st Cir. 2011).................................. 22

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)............................................................................... 7

Baker v. Family Credit Counseling Corp., 440 F. Supp. 2d 392, 414 (E.D. Pa. 2006)................. 3

Basquiat ex rel. Estate of Basquiat v. Sakura Int'l, No. 04-1369(GEL), 2005 WL 1639413, at *5
    (S.D.N.Y. July 5, 2005) ......................................................................................................... 10

Becksted v. Nadeau, 926 A.2d 819, 822-23 (N.H. 2007)........................................................... 20

Beer v. Bennett, 993 A.2d 765, 769 (N.H. 2010) ................................................................. 20, 21

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) .......................................................... 7, 14

Bezdek v. Vibram USA Inc., No. 12-10513-DPW, 2013 WL 639145, at *6 (D. Mass. Feb. 20,
    2013) .................................................................................................................................. 16, 17

Brace v. Rite Aid Corp., No. 10-290-LM, 2011 WL 635299, at *3-5 (D.N.H. Feb. 14, 2011) ... 21

Bridge v. Corning Life Scis., Inc., 997 F. Supp. 551, 553 (D. Vt. 1998) ................................... 21

Broder v. Cablevision Sys. Corp., 418 F.3d 187, 196 (2d Cir. 2005).......................................... 7

Brown v. Milwaukee Spring Co., 82 F.R.D. 103, 104 (E.D. Wis. 1979). .................................... 4

Carter v. Gugliuzzi, 716 A.2d 17, 23-24 (Vt. 1998)................................................................... 21

Cook County College Teachers Union, Local 1600, Am. Federation of Teachers, AFL-CIO v.
    Byrd, 456 F.2d 882, 885 (7th Cir. 1972) ................................................................................. 4

Cox v. Sears Roebuck & Co., 647 A.2d 454, 465 (N.J. 1994) .................................................... 19

Darling v. W. Thrift & Loan, 600 F. Supp. 2d 189, 201-02 (D. Me. 2009) ................................ 22

Davis v. Fed. Election Comm'n, 554 U.S. 724, 734 (2008)........................................................ 12

Dimuro v. Estee Lauder Co., No. 3:12-01789(AVC), 2013 WL 12080901, at *2, (D. Conn. Nov.
    22, 2013) ................................................................................................................................. 2, 7

Duracell U.S. Ops., Inc. v. Ocean State Jobbers, Inc., No. 3:17-1199 (D. Conn. filed July 19,
    2017) ......................................................................................................................................... 2

Dzielak v. Whirlpool Corp., 26 F. Supp. 3d 304, 335 (D.N.J. 2014) .................................... 19, 20

Edwards v. N. Am. Power & Gas, LLC, 120 F. Supp. 3d 132, 138 (D. Conn. 2015).................. 13

Epps v. Bank of Am., N.A., No. 12-1282, 2013 WL 3120282, at *6-7 (Mass. Super. Ct. June 14,
    2013) ........................................................................................................................................ 16

F.T.C. v. Verity Int'l Ltd., 443 F.3d 48, 63 (2d Cir. 2006)......................................................... 23

Ferreira v. Sterling Jewelers, Inc., 130 F. Supp. 3d 471, 482 (D. Mass. 2015).......................... 17

Fink v. Time Warner Cable, 714 F.3d 739, 742 n.3 (2d Cir. 2013) .......................... 10, 17, 21, 24

Frederico v. Home Depot, 507 F.3d 188 202 (3d. Cir. 2007)...................................................... 19

Goshen v. Mut. Life Ins. Co. of N.Y., 774 N.E. 2d 1190, 1190 n.1 (N.Y. 2002)......................... 8

Harris v. Bradley Mem'l Hosp. & Health Ctr., 994 A.2d 153, 173 (Conn. 2010) ...................... 18

Hermida v. Archstone, 950 F. Supp. 2d 298, 304-05 (D. Mass. 2013) ...................................... 16

Iannacchino v. Ford Motor Co., 888 N.E.2d 879, 886-87 (Mass. 2008) .................................... 16

In re Appointment of Indep. Counsel, 766 F.2d 70, 73 (2d Cir.1985) ........................................ 12

In re Bayer Corp. Combination Aspirin Prod. Mktg. & Sales Practices Litig., 701 F. Supp. 2d
    356, 378 (E.D.N.Y. 2010).................................................................................................. 14, 15

In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig., 1 F. Supp. 3d 34, 50 (E.D.N.Y. 2014) ................................................................................................................................ 13

In re New Motor Vehicles Canadian Exp. Antitrust Litig., 350 F. Supp. 2d 160, 186 (D. Me. 2004) ................................................................................................................................... 22

In re Pharm. Indus. Average Wholesale Price Litig., 252 F.R.D. 83, 94 (D. Mass. 2008)............. 3

In re Prempro Prods. Liab. Litig., 230 F.R.D. 555, 565 (E.D. Ark. 2005) ..................................... 3

Kelton v. Hollis Ranch, 927 A.2d 1243, 1246 (N.H. 2007) ......................................................... 21

Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993) .................................................................. 14

Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991)..................................................... 2

Langan v. Johnson & Johnson Consumer Cos., 95 F. Supp. 3d 284, 288-89 (D. Conn. 2015) ... 17

Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996) ......................................................................... 7, 11

Leider v. Ralfe, 387 F. Supp. 2d 283, 292 (S.D.N.Y. 2005) .......................................................... 8

Lewis v. Casey, 518 U.S. 343, 358 n.6 (1996) ........................................................................... 12

Lipton v. Nature Co., 71 F.3d 464, 474 (2d Cir. 1995) ............................................................... 10

Long v. Dell, Inc., 98 A.3d 988, 1003 (R.I. 2014)....................................................................... 23

Lyon v. Caterpillar, Inc., 194 F.R.D. 206, 220 (E.D. Pa. 2000) ................................................... 3

Mahon v. Ticor Title Ins. Co., 683 F.3d 59, 64 (2d Cir. 2012) ................................................... 12

Martin v. N.Y. State Dep't of Mental Hygiene, 588 F.2d 371, 372 (2d Cir. 1978)........................ 7

McCalley v. Samsung Elecs. Am., Inc., No. 07-12141, 2008 WL 878402, at *9 (D.N.J. Mar. 31, 2008) ...................................................................................................................... 14, 15

McGarvey v. Penske Auto. Grp., Inc., 639 F. Supp. 2d 450, 465-66 (D.N.J. 2009) .............. 14, 15

Mladenov v. Wegmans Food Markets, Inc., 124 F. Supp. 3d 360, 374-75 (D.N.J. 2015 ...... 19, 20

N.H. Elec. Coop., Inc. v. Elster Sols., LLC, No. 16-CV-440-PB, 2017 WL 2861667, at *3 (D.N.H. July 5, 2017)........................................................................................................ 21

New World Sols., Inc. v. NameMedia Inc., 150 F. Supp. 3d 287, 330 (S.D.N.Y. 2015).............. 8

O'Connor v. Nantucket Bank, 992 F. Supp. 2d 24, 38 (D. Mass. 2014) ...................................... 16

Picus v. Wal-Mart Stores, Inc., 256 F.R.D. 651, 655-56 (D. Nev. 2009)....................................... 4

Richards v. Direct Energy Servs., LLC, 120 F. Supp. 3d 148, 155-56 (D. Conn. 2015) ............. 13

Rule v. Ft. Dodge Animal Health, Inc., 607 F.3d 250, 255 (1st Cir. 2010).................................. 16

Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984) ................................................................................................................................. 7

S. States Police Benevolent Ass'n, Inc. v. First Choice Armor & Equip., Inc., 241 F.R.D. 85, 93 (D. Mass. 2007)................................................................................................................... 3

Scheuer v. Rhodes, 416 U.S. 232, 232 (1974)............................................................................... 7

Searles v. Fleetwood Homes of Pa., Inc., 878 A.2d 509, 519 n.10 (Me. 2005) .......................... 22

Serrano v. Cablevision Sys. Corp., 863 F. Supp. 2d 157, 167-68 (E.D.N.Y. 2012)... 10, 17, 21, 24

Shaulis v. Nordstrom, Inc., 865 F.3d 1, 10 (1st Cir. 2017)......................................................... 16

Simington v. Lease Fin. Grp., LLC, No. 10-6052(KBF), 2012 WL 651130, at *9 (S.D.N.Y. Feb. 28, 2012) ......................................................................................................................... 14

Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 40 n.20 (1976) ............................................ 13

Smajlaj v. Campbell Soup Co., 782 F. Supp. 2d 84 101 (D.N.J. 2011) ...................................... 20

Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) ......................................................... 12, 13

State v. Weinschenk,  868 A.2d 200, 206 (Me. 2005)........................................................... 22, 23

Stewart v. Smart Balance, Inc., C.A. No. 11-1647(JLL), 2012 WL 4168584, at *11 ................. 20

Stutman v. Chem. Bank, 731 N.E.2d 608, 611 (N.Y. 2000) ......................................................... 8

_Tomby v. Cmty. Renewal Team, Inc._, No. 3:09-1596 CFD, 2010 WL 5174404, at *3 (D. Conn. Dec. 15, 2010) .................................................................................................................. 7

_Torres-Hernandez v. CVT Prepaid Sols., Inc._, No. 08-1057-FLW, 2008 WL 5381227, at *7 n.3 (D.N.J. Dec. 9, 2008) ...................................................................................................... 19

_Tropical Sails Corp. v. Yext, Inc._, No. 14-7582, 2015 WL 2359098, at *3 (S.D.N.Y. May 18, 2015) ........................................................................................................................... 8

_Ulbrich v. Groth_, 78 A.3d 76, 100 (Conn. 2013) ............................................................... 17, 18

_United States v. Yale-New Haven Hosp._, 727 F. Supp. 784, 786 (D. Conn. 1990) ...................... 7

_W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP_, 549 F.3d 100, 106 (2d Cir. 2008) ....... 12

_Wallett v. Anderson_, 198 F.R.D. 20, 25 (D. Conn. 2000) ...................................................... 24

_Warth v. Seldin_, 422 U.S. 490, 498 (1975) ........................................................................ 12

_Zito v. United Techs. Corp._, No. 3:15-744 (AWT), 2016 WL 2946157, at *3 (D. Conn. Mar. 11, 2016), _aff'd_, 673 F. App'x 117 (2d Cir. 2016) ........................................................ 17, 18

## STATUTES

15 U.S.C. § 45(n) ........................................................................................................... 22

Conn. Gen. Stat. § 42-110b(a) ......................................................................................... 17

Conn. Gen. Stat. §§ 42-11a .............................................................................................. 17

Fed. R. Civ. P. 9(b) ........................................................................................................ 20

Federal Trade Commission Act, § 45(a)(1) ......................................................................... 22

Federal Trade Commission Act, § 5(a) ............................................................................... 23

Mass. Gen. Laws. ch. 93A, § 9(3) ..................................................................................... 16

Mass.Gen. Laws. ch. 93A, § 9 .......................................................................................... 16

Me. Rev. Stat. tit. 5, § 207 .............................................................................................. 21

Me. Rev. Stat. tit. 5, § 207 (1) ......................................................................................... 22

N.H. Rev. Stat. § 358-A:1 ............................................................................................... 20

N.J. Stat. § 56:8-2 .......................................................................................................... 19

N.Y. Gen. Bus. Law § 349 ............................................................................................ 8, 10

N.Y. Gen. Bus. Law § 350 ............................................................................................ 8, 10

R.I. Gen. Laws Ann. § 6-13.1-2 ........................................................................................ 23

R.I. Gen. Laws Ann. § 6–13.1–3 ....................................................................................... 23

Vt. Stat. tit. 9, § 2453(a) ................................................................................................. 21

## OTHER AUTHORITIES

U.S. Constitution, Article III ....................................................................................... 11, 12

U.S. Constitution, Article III, § 2 ..................................................................................... 11

## RULES

Fed. R. Civ. P. 12(b)(6) ................................................................................................ 4, 6

Fed. R. Civ. P. 12(e) ....................................................................................................... 24

Fed. R. Civ.P. 23 ............................................................................................................. 3

## INTRODUCTION

Plaintiff Kevin Stewart ("Plaintiff") seeks to recover for allegedly false and deceptive advertising of genuine alkaline Duracell batteries that he purchased at one of the stores of Defendant Ocean State Jobbers, Inc. d/b/a Ocean State Job Lot ("OSJL") in New York. Plaintiff admits that the batteries he purchased were genuine Duracell alkaline batteries, that he knew they were genuine, that he knew they were manufactured by Duracell, and that he intended to purchase them.  Nevertheless, Plaintiff claims that, because the genuine Duracell alkaline batteries he purchased were allegedly packaged for sale in Asia, he was misled in two respects. First, Plaintiff says that the packaging's statements that the genuine Duracell batteries would last "longer" are false and deceptive.  Second, he complains that the genuine Duracell batteries he purchased were manufactured to different specifications and "may perform differently."  Plaintiff does not allege that the batteries he purchased are inferior in any way to Duracell alkaline batteries allegedly packaged for sale in the United States or that the genuine Duracell batteries he purchased in fact did not last as "long" as he expected.

Regarding his claims about battery life, Plaintiff asserts that statements on the packaging that the genuine Duracell alkaline batteries would last "longer" are misleading because they are "meant only for the Asian market," where, he claims, most batteries are zinc carbon batteries. Compl. ¶ 5.  Thus, Plaintiff alleges that he was misled into believing that the Duracell alkaline batteries he purchased would last "longer" than comparable alkaline batteries.  Id.  He claims that OSJL concealed from him the fact that the packaging was only intended to make the "longer" claim as compared with zinc carbon batteries.  Id.  The fatal defect in Plaintiff's reasoning is revealed by the very allegations of his Complaint, which show that the batteries' packaging itself disclosed that the "longer" battery life claims were expressly made "vs. ordinary zinc carbon batteries."  Plaintiff could not reasonably have been materially misled by packaging

that disclosed the very facts he alleges were concealed from him.  Whether the batteries were intended for sale in Asia is entirely irrelevant.  In any event, the "longer" lasting assertions are, under the governing law, "puffery" that does not sustain any claim.  And, Plaintiff does not allege that the batteries he purchased actually failed to last longer than he reasonably expected.

Plaintiff's assertions about specifications of the genuine Duracell batteries he purchased likewise fail to state a claim because they are both conclusory and equivocal.  They are conclusory because Plaintiff simply states the bare conclusion that the specifications for batteries packaged for sale in Asia differ from those packaged for sale in the United States.  The allegations are equivocal because Plaintiff does not allege that the batteries actually perform differently, just that they "may"—and thus may not—perform differently.  They are equivocal also because Plaintiff does not allege that any difference that "may" exist is material, or even that the batteries packaged for sale in Asia are inferior to Duracell batteries intended for sale in the U.S. or to other brands of batteries sold in the U.S.

When Plaintiff's complaint is viewed in its procedural context, it becomes clear why it is so utterly barren of sufficiently developed factual allegations:  Plaintiff has simply copied, sometimes verbatim, from an entirely baseless trademark-infringement complaint that Duracell U.S. Operations, Inc. ("Duracell") filed just 11 days before Plaintiff filed his Complaint ("Duracell Complaint").[1]  Indeed, Plaintiff's allegations concerning the packaging statements about battery life are lifted wholesale from the Duracell Complaint.  Evidently aware that the battery-life statements cannot make out a consumer-protection claim (they do not even make out

---

[1] Duracell U.S. Ops., Inc. v. Ocean State Jobbers, Inc., No. 3:17-1199 (D. Conn. filed July 19, 2017).  A true and accurate copy of the Duracell Complaint is attached hereto as **Exhibit A**.  Because Plaintiff relies on the Duracell Complaint and references it multiple times, that complaint is properly considered by the Court on a motion to dismiss.  See Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991); Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991); Dimuro v. Estee Lauder Co., No. 3:12-01789(AVC), 2013 WL 12080901, at *2, (D. Conn. Nov. 22, 2013).

a trademark-infringement claim), Plaintiff appends to them allegations about "different specifications" and potentially different performance.  These allegations are not made in the Duracell Complaint; Plaintiff made them up, and he deliberately pled them equivocally because he simply does not know whether the specifications are materially different or whether there is any difference in performance at all.  Indeed, Plaintiff did not, because he cannot, even allege that the batteries he purchased performed differently than he reasonably expected.  The Complaint is devoid of such allegations because Plaintiff's factual investigation was simply a copy-and-paste job supplemented by speculative guesswork.

The Complaint should therefore be dismissed because it fails to state a claim under New York law.  It also fails to plausibly allege a violation of any other state's law.  In both of his two counts, Plaintiff alleges violations of New York statutes and then vaguely alleges violations of the "substantially similar" statutes of seven other states:  Connecticut, Maine, Massachusetts, New Hampshire, New Jersey, Rhode Island, and Vermont.  Plaintiff baldly asserts only that he purchased batteries in New York.  Plaintiff, therefore, lacks standing to allege a violation of the statute of any other state.  Moreover, Plaintiff does not identify which statutes OSJL allegedly violated.  It is not OSJL's job to divine which consumer statutes Plaintiff is claiming under, but Plaintiff fails to state a claim under any the statutes that OSJL has nevertheless identified.[2]

---

[2] This Motion challenges only the sufficiency of the allegations pertaining to Plaintiff's substantive claims.  OSJL also disputes that Plaintiff has satisfied the prerequisites for class action certification under Rule 23 of the Federal Rules of Civil Procedure.  Indeed, variances in the substantive prerequisites for liability under the consumer protection statutes of New York, Rhode Island, Maine, New Hampshire, Vermont, Massachusetts, Connecticut, and New Jersey with respect to, *inter alia*, reliance, scienter, causation, punitive damages, ascertainable damages, and/or affirmative defenses render class certification inappropriate.  See, e.g., Baker v. Family Credit Counseling Corp., 440 F. Supp. 2d 392, 414 (E.D. Pa. 2006); S. States Police Benevolent Ass'n, Inc. v. First Choice Armor & Equip., Inc., 241 F.R.D. 85, 93 (D. Mass. 2007); In re Prempro Prods. Liab. Litig., 230 F.R.D. 555, 565 (E.D. Ark. 2005); Lyon v. Caterpillar, Inc., 194 F.R.D. 206, 220 (E.D. Pa. 2000); In re Pharm. Indus. Average Wholesale Price Litig., 252 F.R.D. 83, 94 (D. Mass. 2008).  Accordingly, in the event that the Court denies this Motion in whole or in part, OSJL intends to file a motion challenging Plaintiff's request for a class certification.  While it is Plaintiff's burden to establish his right to maintain a class action by making a timely motion for class certification, OSJL may test the propriety of the action by means of a motion for denial of class certification at any time.  See, e.g., Cook County College Teachers Union, Local 1600, Am. Federation of Teachers, AFL-CIO v. Byrd, 456 F.2d 882, 885 (7th Cir.

Accordingly, and for the reasons set forth more fully herein, Plaintiff's Complaint must be dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(6).

## BACKGROUND[3]

Plaintiff alleges that OSJL operates a chain of 127 retail stores in the northeastern United States, with locations in Connecticut, Maine, Massachusetts, New Hampshire, New Jersey, New York, Rhode Island, and Vermont. Compl., ¶¶ 1, 16.[4] One of the product lines that OSJL carries is the Duracell brand of batteries. Id., ¶ 1. Plaintiff alleges that the Duracell batteries sold at OSJL stores are "gray market" batteries, i.e., batteries "not intended for sale to consumers in the United States, but rather to consumers in Asia." Id., ¶ 4. Plaintiff alleges that Duracell batteries sold at OSJL locations are identifiable as "gray market" batteries because the packaging includes a "pink bunny" mascot. Id., ¶¶ 20-21. According to Plaintiff, although the pink bunny was first used by Duracell, when Duracell failed to renew the relevant trademark in the United States, Energizer started using it. Id., ¶ 20. Duracell and Energizer settled the issue in 1992, with Duracell agreeing not to use or market the pink bunny on Duracell products sold in the United States. Id.

Plaintiff claims that, in addition to the pink bunny mascot, the packaging of the "gray market" Duracell batteries sold at OSJL locations also contains advertising claims—specifically, "LAST LONGER . . . MUCH LONGER" and "UP TO 6× LONGER LASTING POWER"—that are intended for Asian markets, where the "small battery consumer market consists of a substantial percentage of zinc carbon batteries which have lower performance, much shorter

---

1972); Picus v. Wal-Mart Stores, Inc., 256 F.R.D. 651, 655-56 (D. Nev. 2009); Brown v. Milwaukee Spring Co., 82 F.R.D. 103, 104 (E.D. Wis. 1979).

[3] OSJL accepts the facts alleged in Plaintiff's Complaint as true for the purposes of this motion to dismiss only.

[4] While OSJL accepts the facts alleged in Plaintiff's Complaint as true for the purposes of this motion to dismiss, OSJL also states that Ocean State Jobbers, Inc. does not operate the vast majority of the Ocean State Job Lot stores in the Northeastern United States. Ocean State Jobbers, Inc. is not a parent company; the entities that operate OSJL locations are affiliates of Ocean State Jobbers, Inc. OSJL reserves its rights to raise additional defenses concerning this corporate relationship if necessary.

shelf life, and a propensity to leak." <u>Id.</u>, ¶ 23.  Plaintiff alleges that the "small battery consumer market in the United States . . . is comprised much more significantly of alkaline batteries and other high tech and high quality batteries such as lithium batteries." <u>Id.</u>  Plaintiff contends that simply because the statements on the Duracell batteries were allegedly "meant only for the Asian market," they are for this reason alone "materially false and misleading" to consumers in the United States. <u>Id.</u> ¶ 5.  Plaintiff does <u>not</u> allege that the Duracell batteries allegedly packaged for sale in Asia are inferior to Duracell batteries packaged for sale in the United States.

Plaintiff also complains that the batteries he purchased at one OSJL store do not contain any English-language product guarantee, "contain information in foreign languages," and contain only a foreign call-center telephone number and not a United States number. <u>Id.</u> ¶ 22.  Plaintiff lifts all of these facts, at times verbatim, from the baseless Duracell Complaint.  What Plaintiff <u>fails</u> to mention is that the Duracell Complaint on which he relies reveals that the packaging statements concerning battery life have appended to them an asterisk, which qualifies the claims as follows: "vs. ordinary zinc carbon batteries." <u>Exh. A</u> at 8 & 9.  The packaging statements are therefore expressly qualified, their basis disclosed in plain and ordinary English.

But Plaintiff goes further and adds a new allegation, that the Duracell batteries allegedly packaged for sale in Asia "have different specifications" such that they "<u>may</u> perform differently." <u>Compl.</u> ¶ 4 (emphasis added); <u>id.</u> ¶ 6 (Duracell batteries packaged for sale in Asia are "produced to different quality and performance specifications").  Plaintiff provides no basis whatsoever for these conclusory allegations.  He does not say how he "knows" that the specifications are different or what the differences are, nor does he allege that the supposed distinctions result in performance differences.  Plaintiff alleges only that they "may" so result (and, of course, this means that there <u>may not be any</u> differences).

Plaintiff alleges he purchased batteries at an OSJL location in New York.  Id., ¶ 14.  He does not allege that he purchased any batteries at an OSJL store in any other state.  Nevertheless, Plaintiff attempts to state claims under not just New York law, but also the "substantially similar" laws of Connecticut, Maine, Massachusetts, New Hampshire, New Jersey, Rhode Island, and Vermont.

Plaintiff admits that he purchased genuine Duracell alkaline batteries and that he knew that he was purchasing genuine Duracell alkaline batteries.  Plaintiff does not claim to have been misled by the pink bunny mascot on the packaging.  Plaintiff does not claim that the packaging statements concerning battery length are untrue as to U.S. markets, just that they were meant for Asian markets.  In any event, Plaintiff provides no factual basis for any allegation that the packaging statements are untrue.  As noted, those packaging statements expressly disclose that they are comparing the Duracell alkaline batteries to "ordinary zinc carbon batteries."  Plaintiff does not claim that the batteries he purchased did not last as long as he thought they should, whether based on the product packaging or comparison to any other similar battery.  While Plaintiff alleges in conclusory fashion that he paid a "premium" price, id., ¶ 26, he supports this with no facts that would plausibly lead to an inference that Plaintiff paid more for the batteries than he would have for Duracell batteries packaged for sale in the U.S., or for batteries produced by a competitor of Duracell and packaged for sale in the U.S.  Indeed, Plaintiff also alleges that OSJL is known for its "bargain" prices, which would mean he paid less than he would otherwise have at another store.

## STANDARD OF REVIEW

"A court must grant a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) if a plaintiff fails to establish a claim upon which relief may be granted."  Dimuro v. Estee Lauder Cos., No. 3:12-01789(AVC), 2013 WL 12080901, at *2 (D. Conn. Nov. 22, 2013), aff'd sub nom. DiMuro

v. Clinique Labs., LLC, 572 F. App'x 27 (2d Cir. 2014).  Such a motion "asses[es] the legal feasibility of the complaint"; "[it does] not assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984).  "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his or her claims." United States v. Yale-New Haven Hosp., 727 F. Supp. 784, 786 (D. Conn. 1990) (citing Scheuer v. Rhodes, 416 U.S. 232, 232 (1974)).  The Court may consider only those facts "stated on the face of the complaint, in documents by reference, and to matters of which judicial notice may be taken." Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991).

When ruling on a 12(b)(6) motion, the court must "accept the facts alleged in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." Broder v. Cablevision Sys. Corp., 418 F.3d 187, 196 (2d Cir. 2005).  "While the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice." Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996) (citing Albert v. Carovano, 851 F.2d 561, 572-573 (2d Cir. 1988)); Martin v. N.Y. State Dep't of Mental Hygiene, 588 F.2d 371, 372 (2d Cir. 1978).  In order to survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim is facially plausible if 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.'" Tomby v. Cmty. Renewal Team, Inc., No. 3:09-1596 CFD, 2010 WL 5174404, at *3 (D. Conn. Dec. 15, 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)) (citations omitted).

<u>**ARGUMENT**</u>

I.    **Plaintiff's New York Law Claims Should Be Dismissed Because He Has Not Plausibly Alleged That Any Aspect of OSJL's Sale of the Batteries Was Materially Misleading.**

N.Y. Gen. Bus. Law § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."  N.Y. Gen. Bus. Law § 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state."  "The standard for recovery under General Business Law § 350, while specific to false advertising, is otherwise identical to section 349."  <u>New World Sols., Inc. v. NameMedia Inc.</u>, 150 F. Supp. 3d 287, 330 (S.D.N.Y. 2015) (quoting <u>Goshen v. Mut. Life Ins. Co. of N.Y.</u>, 774 N.E. 2d 1190, 1190 n.1 (N.Y. 2002).  Plaintiff must prove three elements: "first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act."  <u>Id.</u> at 329 (quoting <u>Stutman v. Chem. Bank</u>, 731 N.E.2d 608, 611 (N.Y. 2000)).

"To aid in the interpretation of the second element, the New York Court of Appeals has instructed that a deceptive act or practice has an 'objective definition,' whereby deceptive acts or practices—which may be acts or omissions—are 'limited to those likely to mislead a reasonable consumer acting reasonably under the circumstances.' " <u>New World Sols.</u>, 150 F. Supp. 3d at 329-30 (quoting <u>Leider v. Ralfe</u>, 387 F. Supp. 2d 283, 292 (S.D.N.Y. 2005)).  "Although not explicitly stated in the text of either provision, courts have consistently found that the gravamen of a section 349 or 350 claim is 'consumer injury or harm to the public interest.' " <u>Id.</u> at 330 (quoting <u>Tropical Sails Corp. v. Yext, Inc.</u>, No. 14-7582, 2015 WL 2359098, at *3 (S.D.N.Y. May 18, 2015)).

Plaintiff's claims under New York General Business Law Sections 349 and 350 fail because the Complaint does not plausibly allege that OSJL's advertising was materially

misleading.  The crux of Plaintiff's claim is that OSJL misled consumers with respect to the

"gray market" Duracell batteries sold in OSJL stores.  Specifically, Plaintiff alleges that "by

marketing in the United States gray market Duracell alkaline batteries intended by the

manufacturer for sale only in foreign markets, with foreign market specifications and foreign

market advertising claims, without disclosing these material facts, [OSJL] plainly conveys the

false and misleading impression that it is selling high quality Duracell alkaline batteries

manufactured for the U.S. market but at the bargain prices for which Ocean State is known."

Compl., ¶ 24.  However, Plaintiff fails to allege that the "gray market" Duracell batteries sold at

OSJL stores are not "high quality" or that they are otherwise inferior to Duracell batteries

intended for sale in the United States, or to other brands of batteries sold in the United States.

   Plaintiff claims in particular that the subject advertising statements on the packaging of

the "gray market" Duracell batteries are "materially false and misleading to consumers in the

Northeastern United States where [OSJL] sells these gray market products."  Id., ¶ 5.  The sole

fact that Plaintiff alleges in support of this assertion is that the aforementioned advertising claims

are misleading is that the claims "were not intended to apply vis-à-vis competitors' alkaline

batteries designed for the U.S. market."  Id.  However, the mere fact that the advertising claims

were allegedly composed with Asian markets in mind does not mean, in and of itself, that the

statements are untrue with respect to U.S. markets.

   Indeed, aside from asserting that there are differences in the chemical composition of

batteries in U.S. and Asian markets, Plaintiff provides no plausible basis from which to infer that

the subject advertising claims are not equally true for U.S. markets.  For example, Plaintiff does

not allege an absence of other qualities of the "gray market" Duracell batteries which might

make them outperform other brands of batteries even in U.S. markets.  Moreover, Plaintiff does

not allege that the "gray market" Duracell batteries he purchased from OSJL did not last as long as he expected, or that they did not last as long as other brands of batteries that he has used.

Additionally, Plaintiff has not plausibly alleged that he was materially misled. He intended to purchase genuine Duracell alkaline batteries, he did so, and he knew what he was purchasing. The battery-life statements on the product packaging expressly say that they are based on comparisons with "ordinary zinc carbon batteries," which are sold in the United States just as they are in Asia. Plaintiff makes no allegations that the packaging statements are untrue in the United States. That the packaging statements might have been "meant only for the Asian market" is beside the point.

Moreover, the statements that the batteries "LAST LONGER . . . MUCH LONGER" and have "UP TO 6× LONGER LASTING POWER" cannot be false or misleading within the meaning of Sections 349 and 350. These statements constitute mere "puffery," i.e., "[s]ubjective claims about products, which cannot be proven either true or false . . . ." Lipton v. Nature Co., 71 F.3d 464, 474 (2d Cir. 1995). Courts have found statements to be puffery as a matter of law where, as here, the statements do not provide any concrete representations. Basquiat ex rel. Estate of Basquiat v. Sakura Int'l, No. 04-1369(GEL), 2005 WL 1639413, at *5 (S.D.N.Y. July 5, 2005). Indeed, the Second Circuit has held specifically that a claim that a product has "up to" a certain multiplier more lasting power (or similar characteristic) is not misleading within the meaning of N.Y. Gen. Bus. Law §§ 349 and 350 because "the phrase 'up to' would 'lead a reasonable consumer to expect that [lasting time] could be less than . . . advertised.'" See Fink v. Time Warner Cable, 714 F.3d 739, 742 n.3 (2d Cir. 2013); Serrano v. Cablevision Sys. Corp., 863 F. Supp. 2d 157, 167-68 (E.D.N.Y. 2012) (claim that internet speed was "up to 5× faster" constitutes inactionable puffery).

The Complaint does not plausibly allege that Duracell batteries packaged for sale in Asia are materially inferior to batteries packaged for sale in the United States.  Plaintiff includes no facts to support his conclusory assertion that the specifications are any different, an assertion he invented himself.  He does not even allege that any different specifications resulted in a battery that was inferior in any way.  Plaintiff simply states, again in conclusory fashion, that the batteries packaged for sale in Asia "may perform differently."  Of course, under Plaintiff's own allegations, they may not perform differently.  He has conveniently alleged absolutely nothing relevant about the supposed performance of the batteries he purchased.  Plaintiff does not even allege that they in fact lasted less time than Duracell alkaline batteries packaged for sale in the United States.  In short, Plaintiff's unsupported allegations that the advertising claims on the packaging of the "gray market" Duracell batteries sold at OSJL stores are misleading are nothing more than "bald assertions" which are disregarded at the pleading stage.  See Leeds, 85 F.3d at 53.  Stripped of these unsupported allegations, Plaintiff's Complaint fails to state a claim for relief and, therefore, should be dismissed.

## II.    Plaintiff Lacks Standing to Assert Claims Under the Law of Any Other State.

Plaintiff's Complaint is also subject to dismissal because Plaintiff lacks standing under Article III of the U.S. Constitution to bring his claim under the laws of any state other than New York.  Plaintiff alleges that he purchased batteries at an OSJL in New York.  Compl., ¶14.  He does not allege that he purchased them at any other OSJL in any other state.  Nevertheless, Plaintiff purports to allege violations of the "substantially similar" (but unidentified) laws of seven other states—Connecticut, Maine, Massachusetts, New Hampshire, New Jersey, Rhode Island, and Vermont.  Plaintiff's claims under these other states' laws should be dismissed because Plaintiff does not have standing to assert them.

Article III, Section 2 of the U.S. Constitution limits the jurisdiction of the federal courts to the resolution of cases and controversies.  Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016).  "In order to ensure that this 'bedrock' case-or-controversy requirement is met, courts require that plaintiffs establish their 'standing' as 'the proper part[ies] to bring' suit."  W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP, 549 F.3d 100, 106 (2d Cir. 2008) (citation omitted).  To have Article III standing, a plaintiff must demonstrate (1) a personal injury in fact (2) that the challenged conduct of the defendant caused and (3) which a favorable decision will likely redress.  Spokeo, 136 S. Ct. at 1547.

The standing requirement is a threshold issue that must be satisfied at the outset of each case.  Warth v. Seldin, 422 U.S. 490, 498 (1975) ("[S]tanding imports justiciability . . . . [It] is the threshold question in every federal case, determining the power of the court to entertain the suit.");  In re Appointment of Indep. Counsel, 766 F.2d 70, 73 (2d Cir.1985) ("Since the standing requirement is derived from Article III limitations on the federal courts' powers, it is the threshold issue in every case.").  Additionally, "[i]t is well established that 'a plaintiff must demonstrate standing for **each claim** [he] seeks to press.'  Thus, with respect to each asserted claim, '[a] plaintiff must always have suffered a distinct and palpable injury to [him]self.'"  Mahon v. Ticor Title Ins. Co., 683 F.3d 59, 64 (2d Cir. 2012) (citations omitted; bold emphasis added);  see also Davis v. Fed. Election Comm'n, 554 U.S. 724, 734 (2008) ("[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought.") (internal quotation marks and citation omitted);  Lewis v. Casey, 518 U.S. 343, 358 n.6 (1996) ("[S]tanding is not dispensed in gross . . . 'nor does a plaintiff who has been subject to injurious conduct of one kind possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject.'") (citation omitted).

"That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.'" Spokeo, 136 S. Ct. at 1547 n.6 (quoting Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 40 n.20 (1976)). Accordingly, Plaintiff here is required to show "that he has standing personally to assert all of the claims in the Complaint at the case's inception, regardless of if and when a class is certified." Edwards v. N. Am. Power & Gas, LLC, 120 F. Supp. 3d 132, 138 (D. Conn. 2015).

Plaintiff cannot do this as to the seven additional states mentioned in passing in the Complaint because he did not purchase batteries in any of those states. Plaintiff simply lacks standing to assert claims under the consumer protection statutes of Connecticut, Maine, Massachusetts, New Hampshire, New Jersey, Rhode Island, and Vermont. See Edwards, 120 F. Supp. 3d at 137-38 (where plaintiff alleged that he purchased electricity from utility company in Connecticut, but not in New Hampshire, Maine, and Rhode Island, plaintiff lacked standing to bring claims against the utility company under the consumer protection statutes of any state other than Connecticut); Richards v. Direct Energy Servs., LLC, 120 F. Supp. 3d 148, 155-56 (D. Conn. 2015) (where plaintiff purchased electricity in Connecticut, but not Massachusetts, plaintiff could maintain unfair trade practices act against utility company only under the laws of Connecticut, because he lacked standing to assert claims under Massachusetts law) (citing In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig., 1 F. Supp. 3d 34, 50 (E.D.N.Y. 2014) (finding that a plaintiff lacks standing to bring claims on behalf of a class "under the laws of states where the named plaintiffs have never lived or resided") (citations omitted), reconsidered on other grounds, 14 F. Supp. 3d 99 (E.D.N.Y. 2014); Simington v. Lease Fin.

13

Grp., LLC, No. 10-6052(KBF), 2012 WL 651130, at *9 (S.D.N.Y. Feb. 28, 2012) (noting in the context of a proposed class action that "[p]laintiffs do not have an injury traceable to conduct that occurred in any other state than those in which they conduct business and thus, they cannot assert a claim under those states' consumer fraud statutes.")).

III.    **Plaintiff Fails to State a Claim Under the Laws of Connecticut, Maine, Massachusetts, New Hampshire, New Jersey, Rhode Island, and Vermont.**

In contrast to the claims Plaintiff asserts under specifically identified New York statutes, which fail for the reasons articulated above, he attempts to allege claims under the laws of seven other states with the vague, passing reference to "the substantially similar laws" of Connecticut, Maine, Massachusetts, New Hampshire, New Jersey, Rhode Island, and Vermont. Compl. ¶¶ 41, 49-50.  He identifies no statute and makes no allegation particular to any of those states.

"[P]laintiffs cannot use class actions to escape pleading requirements."  In re Bayer Corp. Combination Aspirin Prod. Mktg. & Sales Practices Litig., 701 F. Supp. 2d 356, 378 (E.D.N.Y. 2010).  "The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" Id. (quoting Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993) (internal quotations omitted));  see also Twombly, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the grounds for his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (internal quotations and alterations omitted).  "It follows that '[t]he mere listing of state consumer fraud statutes . . . is insufficient to state a claim.'"  In re Bayer Corp. Litig., 701 F. Supp. 2d at 378 (quoting McGarvey v. Penske Auto. Grp., Inc., 639 F. Supp. 2d 450, 465-66 (D.N.J. 2009)).  A plaintiff must allege the elements of the various statutes and the facts permitting the court to draw inferences that the elements exist.  See id.;  see also McCalley v. Samsung Elecs. Am., Inc., No. 07-12141, 2008 WL 878402, at *9 (D.N.J. Mar. 31, 2008).

For example, in McGarvey, the plaintiffs brought claims pursuant to the consumer fraud acts of New Jersey and fifteen other states.  639 F. Supp. 2d at 464.  As for the latter, the plaintiffs did "not even set forth the elements of the fifteen causes of action… or explain how the fifteen listed statutes apply to the facts of [the] case."  Id. at 465.  The McGarvey court dismissed the plaintiffs' claims under the fifteen other states' laws, holding that "the mere listing of consumer fraud statutes… is insufficient to state a claim."  Id.  Similarly in McCalley, the plaintiff alleged violations of the unfair and deceptive acts and practices statutes of 44 states and the District of Columbia.  2008 WL 878402, at *9.  The court noted that the plaintiff "fail[ed] to allege even the elements of the various statutes, or facts permitting [the] [c]ourt to draw inferences that the elements exist," and agreed with the defendants' argument that dismissal of the claims was warranted because the plaintiff did not "go [through] the trouble of elaborating how each of these statutes, with their many variations, would apply to [the plaintiff's] factual allegations."  Id.

Here, Plaintiff does not so much as list the actual statutes, much less "draw[] the connection between the statutes and [OSJL's] offending conduct."  See In re Bayer Corp. Combination Aspirin Prod. Mktg. & Sales Practices Litig., 701 F. Supp. 2d at 378-79.  Indeed, Plaintiff's passing references to the "similar consumer protection statutes of Rhode Island, Maine, New Hampshire, Vermont, Massachusetts, Connecticut, and New Jersey," entirely fails to "link defendant's actions to the elements of the state law causes of action and sketch the outlines of those causes of action."  See id. at 379.  Accordingly, even if the consumer protection assertions related to these other states were not deficient for lack of standing, Plaintiff's claims under the laws of Rhode Island, Maine, New Hampshire, Vermont, Massachusetts, Connecticut, and New Jersey must be dismissed for failure to state a claim upon which relief can be granted.

A.     *Plaintiff Fails to State a Claim Under Any of the States' Statutes*

Plaintiff has not adequately described his position under Rhode Island, Maine, New Hampshire, Vermont, Massachusetts, Connecticut, and New Jersey law, and it is not OSJL's responsibility to attempt to divine the statutes under which Plaintiff would assert a claim. Nevertheless, it is clear that, under the statutes that OSJL is able to identify based on Plaintiff's insufficient allegations, Plaintiff's claims fail both for the reasons already articulated and for reasons specific to each state's statute.

For example, Massachusetts General Laws ch. 93A, § 9, requires, as a jurisdictional prerequisite to any case by a consumer, that the consumer have sent the defendant a demand letter at least 30 days before filing suit. Mass. G. L. ch. 93A, § 9(3).  The demand letter requirement applies equally to claims brought by individual consumers and putative class action claims.  Hermida v. Archstone, 950 F. Supp. 2d 298, 304-05 (D. Mass. 2013).  Compliance with this jurisdictional predicate must be alleged in the complaint and where, as here, it is not, the claim must be dismissed.  See, e.g., O'Connor v. Nantucket Bank, 992 F. Supp. 2d 24, 38 (D. Mass. 2014) (dismissing plaintiff's Chapter 93A claims where he failed to allege that he issued a demand letter prior to filing suit in compliance with Section 9); Epps v. Bank of Am., N.A., No. 12-1282, 2013 WL 3120282, at *6-7 (Mass. Super. Ct. June 14, 2013) (same).

Additionally, Massachusetts courts recognize the "price premium" theory of injury where the plaintiff alleges that he paid more for a product based upon a specific promised characteristic that he did not receive.  See, e.g., Shaulis v. Nordstrom, Inc., 865 F.3d 1, 10 (1st Cir. 2017); Rule v. Ft. Dodge Animal Health, Inc., 607 F.3d 250, 255 (1st Cir. 2010); Bezdek v. Vibram USA Inc., No. 12-10513-DPW, 2013 WL 639145, at *6 (D. Mass. Feb. 20, 2013); Iannacchino v. Ford Motor Co., 888 N.E.2d 879, 886-87 (Mass. 2008).  If, however, the plaintiff received the benefit of the bargain, he cannot recover under the premium price theory.  See id.  Here, Plaintiff paid

16

for, and received, genuine Duracell batteries.  Although Plaintiff alleges in conclusory fashion that the Duracell batteries he purchased "may perform differently" and were made to different specifications, he does not allege that they were defective or that they in fact performed differently than batteries packaged for sale in the United States or even that they did not last as long as he expected.  Because Plaintiff failed to adequately allege that he did not receive the benefit of the bargain, his Massachusetts claim must be dismissed.  See Bezdek, 2013 WL 639145, at *5 n.9; Ferreira v. Sterling Jewelers, Inc., 130 F. Supp. 3d 471, 482 (D. Mass. 2015).

Plaintiff's claims under Connecticut law, to the extent OSJL can determine under which statute Plaintiff is proceeding, are similarly infirm.  The Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-11a, et seq., prohibits the use of "unfair or deceptive acts or practices in the conduct of any trade or commerce."  Conn. Gen. Stat. § 42-110b(a). "CUTPA claims can be based on either an 'actual deceptive practice' or an unfair practice—that is, a 'practice amounting to a violation of public policy.'"  Langan v. Johnson & Johnson Consumer Cos., 95 F. Supp. 3d 284, 288-89 (D. Conn. 2015) (quoting Ulbrich v. Groth, 78 A.3d 76, 100 (Conn. 2013)).  Certain representations do not constitute deceptive acts within the meaning of the statute.  See, e.g., Zito v. United Techs. Corp., No. 3:15-744 (AWT), 2016 WL 2946157, at *3 (D. Conn. Mar. 11, 2016), aff'd, 673 F. App'x 117 (2d Cir. 2016) (citing with approval Fink, 714 F.3d at 741 ("It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer.")).  The Second Circuit has held specifically that claims that a product has "up to" a certain multiplier more longevity (or similar characteristic) are not misleading as a matter of law because "the phrase 'up to' would 'lead a reasonable consumer to expect that [lasting time] could be less than . . . advertised.'"  Fink, 714 F.3d at 742 n.3;  see also Serrano, 863 F. Supp. 2d at 167-68

17

(claim that internet speed was "up to 5× faster" constitutes inactionable puffery).  For the reasons set forth above, Plaintiff, therefore, cannot state a claim that OSJL engaged in an "actual deceptive practice."

Nor has Plaintiff stated a claim for an unfair practice under CUPTA.  To determine whether an act or practice is unfair under CUTPA, Connecticut courts look to the following factors: "(1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons]."  Ulbrich, 78 A.3d at 100 (alterations in original) (quoting Harris v. Bradley Mem'l Hosp. & Health Ctr., 994 A.2d 153, 173 (Conn. 2010)).  Plaintiff does not allege that OSJL's conduct is within "the penumbra of some [Connecticut] common law, statutory, or other established concept of unfairness" or that it is "immoral, unethical, oppressive, or unscrupulous" within the meaning of the CUTPA, nor could he plausibly do so.  The third criterion requires that the alleged injury "must be substantial; it must not be outweighed by any countervailing benefits to consumers or competition that the practice produces; and it must be an injury that consumers themselves could not reasonably have avoided."  AG Foods, Inc. v. Pepperidge Farm, Inc., 579 A.2d 69, 77 (Conn. 1990) (emphasis omitted).  Thus, Plaintiff must allege sufficient facts concerning the absence of countervailing benefits to consumers or competition and concerning consumers' inability to avoid the injury.  See Zito, 2016 WL 2946157, at *7 (dismissing CUPTA claims for failure to allege the absence of countervailing benefits or plaintiff's inability to avoid injury).  Plaintiff has failed to do so and, as a result, any claim under CUPTA must be dismissed.

The New Jersey Consumer Fraud Act ("NJCFA") prohibits, "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby."  N.J. Stat. § 56:8-2.  To state a claim under the NJCFA, a plaintiff must allege: "(1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendant's unlawful conduct and the Plaintiffs' ascertainable loss."  Frederico v. Home Depot, 507 F.3d 188 202 (3d. Cir. 2007) (citing Cox v. Sears Roebuck & Co., 647 A.2d 454, 465 (N.J. 1994)).

Under the NJCFA, an "ascertainable loss" is one that is "capable of calculation, and not just hypothetical or illusory."  Mladenov v. Wegmans Food Markets, Inc., 124 F. Supp. 3d 360, 374-75 (D.N.J. 2015; Torres-Hernandez v. CVT Prepaid Sols., Inc., No. 08-1057-FLW, 2008 WL 5381227, at *7 n.3 (D.N.J. Dec. 9, 2008) ("A sufficiently plead[ed] ascertainable loss is one with enough specificity as to give the defendant notice of possible damages.").  "A cognizable injury . . . must consist of more than just unmet expectation."  Dzielak v. Whirlpool Corp., 26 F. Supp. 3d 304, 335 (D.N.J. 2014).  Here, Plaintiff must allege either that the batteries he purchased were essentially worthless (which he does not) or that they were worth less than the product promised.  Mladenov, 124 F. Supp. 3d at 374-75.  To claim the latter, Plaintiff must allege "(1) a reasonable belief about the product induced by a misrepresentation; and (2) that the difference in value between the product promised and the one received can be reasonably quantified."  Id. at 375.  Although a plaintiff is not required to allege a specific dollar amount to

survive the pleadings stage,'" <u>Mladenov</u>, 124 F. Supp. 3d at 375 (quoting <u>Dzielak</u>, 26 F. Supp. 3d at 336), the "[f]ailure to quantify this difference in value results in the dismissal of a claim." <u>Smajlaj v. Campbell Soup Co.</u>, 782 F. Supp. 2d 84 101 (D.N.J. 2011).  Because the Complaint lacks any detail as to the cost of the batteries Plaintiff paid and the supposed value of what he received, it does not sufficiently plead an ascertainable loss, and Plaintiff fails to state a claim for relief under the NJCFA.  <u>See</u> <u>Stewart v. Smart Balance, Inc.</u>, C.A. No. 11-1647(JLL), 2012 WL 4168584, at *11 (D.N.J. June 26, 2012).

Plaintiff's failure to identify any specific consumer protection statute is especially egregious with respect to New Hampshire.  The New Hampshire Consumer Protection Act ("NHCPA") contains, in addition to its general proscription of unfair or deceptive acts or practices, 15 categories of unlawful acts.  N.H. Rev. Stat. § 358-A:1.  Plaintiff has not alleged a claim under any of them.  As an initial matter, the general proscription clause requires allegations that the defendant's conduct was within the penumbra of some common-law, statutory, or other established concept of unfairness; was immoral, unethical, oppressive, or unscrupulous; or caused substantial injury to consumers.  <u>Becksted v. Nadeau</u>, 926 A.2d 819, 822-23 (N.H. 2007).  As demonstrated above, Plaintiff has failed to sustain his pleading burden on any of these grounds.  The general proscription clause also requires that the Plaintiff show "that the defendant's acts attained a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce."  <u>Beer v. Bennett</u>, 993 A.2d 765, 769 (N.H. 2010).  Again, Plaintiff has failed to do so.

While Plaintiff has declined to articulate which specific category of the NHCPA is relevant to his claim, any argument under the statute still fails.  The NHCPA's 15 specific categories require that Plaintiff plead, under the heightened pleading standards of Fed. R. Civ. P.

9(b), a scienter element, that the defendant acted with actual knowledge of the falsity of the representation or with reckless disregard for its truth. <u>N.H. Elec. Coop., Inc. v. Elster Sols., LLC</u>, No. 16-CV-440-PB, 2017 WL 2861667, at *3 (D.N.H. July 5, 2017); <u>Brace v. Rite Aid Corp.</u>, No. 10-290-LM, 2011 WL 635299, at *3-5 (D.N.H. Feb. 14, 2011); <u>Beer</u>, 170 993 A.2d at 768-69; <u>Kelton v. Hollis Ranch</u>, 927 A.2d 1243, 1246 (N.H. 2007).  Plaintiff does not allege that OSJL knew that the claims that the "gray market" Duracell batteries lasted up to "6X LONGER" were not true compared to other batteries in U.S. markets.  Similarly, Plaintiff does not allege any facts supporting the inference that OSJL should have known that the advertising claims on the "gray market" Duracell batteries were misleading.  Accordingly, to the extent that Plaintiff seeks to hold OSJL liable for violations the NHCPA, his claims must be dismissed.

The Vermont Consumer Fraud Act ("VCFA"), Vt. Stat. tit. 9, § 2453(a), requires that "1) there must be a representation, practice, or omission likely to mislead consumers; 2) the consumers must be interpreting the message reasonably under the circumstances; and 3) the misleading effects must be 'material,' that is, likely to affect consumers' conduct or decision with regard to a product." <u>Bridge v. Corning Life Scis., Inc.</u>, 997 F. Supp. 551, 553 (D. Vt. 1998).  Vermont also applies an objective standard, "looking to whether the representation or omission had the 'capacity or tendency to deceive' a reasonable consumer." <u>Carter v. Gugliuzzi</u>, 716 A.2d 17, 23-24 (Vt. 1998).  As set forth above, <u>see</u> <u>supra</u>, pp. 10, 18-19, under two recent Second Circuit decisions, the packaging on the batteries Plaintiff allegedly purchased was not misleading.  <u>Fink</u>, 714 F.3d at 742 n.3 (quoting <u>Fink</u>, 837 F. Supp. 2d at 283-84);  <u>see</u> <u>also</u> <u>Serrano</u>, 863 F. Supp. 2d at 167-68.  Accordingly, to the extent Plaintiff is alleging a violation of Vt. Stat. tit. 9, § 2453(a), those claims must be dismissed for failure to state a claim upon which relief can be granted.

21

The Maine Unfair Trade Practices Act ("MUTPA") forbids "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Me. Rev. Stat. tit. 5, § 207.  As under Massachusetts law, under the MUTPA "a prospective plaintiff must deliver to the prospective defendant 'a written demand for relief, identifying the claimant and reasonably describing the unfair and deceptive act or practice relied upon and the injuries suffered' at least thirty days before filing an action."  See In re New Motor Vehicles Canadian Exp. Antitrust Litig., 350 F. Supp. 2d 160, 186 (D. Me. 2004).  Plaintiff has failed to do so here and, therefore, any claims under MUTPA must be dismissed.

Notwithstanding Plaintiff's failure to comply with the MUTPA's demand letter requirement, any claims under the MUTPA must be dismissed for failure to state a claim upon which relief can be granted.  "Under the statute, in defining whether a practice is unlawful, the Maine legislature directed that guidance be sought from the interpretations of the [FTCA]." Anderson v. Hannaford Bros. Co., 659 F.3d 151, 159-60 (1st Cir. 2011) (citing Me. Rev. Stat. tit. 5, § 207 (1) ("It is the intent of the Legislature that in construing this section the courts will be guided by the interpretations given by the [FTC] the Federal Courts to Section 45(a)(1) of the [FTCA] (15 U.S.C. § 45(a)(1)), as from time to time amended.").  Accordingly, Maine courts have looked generally to the FTCA to determine whether "the act or practice causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." Searles v. Fleetwood Homes of Pa., Inc., 878 A.2d 509, 519 n.10 (Me. 2005) (quoting 15 U.S.C. § 45(n)) (internal quotation marks omitted); see also Darling v. W. Thrift & Loan, 600 F. Supp. 2d 189, 201-02 (D. Me. 2009) (quoting State v. Weinschenk,  868 A.2d 200, 206 (Me. 2005)). Here, Plaintiff alleges that he and the proposed class members suffered a "substantial injury" as a

result of OSJL's conduct in a conclusory fashion, and he fails to provide a basis for valuing or estimating the extent of the "substantial injury."  As discussed above, see supra pp. 19-20, Plaintiff has failed to allege *any* facts pertaining to the absence of countervailing benefits to consumers or competition or concerning consumers' inability to avoid the injury.  Therefore, to the extent Plaintiff is alleging that OSJL violated the MUTPA, those claims must be dismissed for failure to state a claim upon which relief can be granted.

Finally, the Rhode Island Deceptive Trade Practices Act ("DTPA") provides that "unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful." R.I. Gen. Laws Ann. § 6-13.1-2.  In the DTPA, the Rhode Island General Assembly provided interpretive guidance by declaring that "due consideration and great weight shall be given to the interpretations of the federal trade commission and the federal courts relating to § 5(a) of the [FTCA]."  R.I. Gen. Laws Ann. § 6–13.1–3.  To determine whether a trade practice is "unfair" under the DTPA, Rhode Island courts employ the same test utilized by the FTC as discussed above.  As previously stated, see supra, pp. 19, 22, Plaintiff has failed to allege that OSJL's conduct falls within any of these categories.

Meanwhile, to determine whether a trade practice is "deceptive" under the DTPA, a plaintiff must set forth three elements: "(1) a representation, omission, or practice, that (2) is likely to mislead consumers acting reasonably under the circumstances, and (3) the representation, omission, or practice is material."  Long v. Dell, Inc., 98 A.3d 988, 1003 (R.I. 2014) (quoting F.T.C. v. Verity Int'l Ltd., 443 F.3d 48, 63 (2d Cir. 2006)).  Once again, the fact that the packaging of the "gray market" Duracell batteries includes claims that the batteries last "up to" six times longer does not, as a matter of law, have a tendency to mislead a reasonable consumer because "the phrase 'up to' would 'lead a reasonable consumer to expect that [lasting

time] could be less than the advertised [duration].'"  Fink, 714 F.3d at 742 n.3 (quoting Fink, 837 F. Supp. 2d at 283-84).  See also Serrano, 863 F. Supp. 2d at 167-68.  Accordingly, if Plaintiff is asserting a claim under the DTPA, they must be dismissed for failure to state a claim upon which relief can be granted.

        B.      *In the Alternative, OSJL Moves for a More Definite Statement With Respect to Plaintiff's Claims Under the Consumer Protection Laws of Rhode Island, Maine, New Hampshire, Vermont, Massachusetts, Connecticut and New Jersey.*

In the alternative, OSJL requests that the Court treat this motion as a motion for a more definite statement with respect to Plaintiff's claims under the laws of Rhode Island, Maine, New Hampshire, Vermont, Massachusetts, Connecticut, and New Jersey pursuant to Rule 12(e) of the Federal Rules of Civil Procedure.  Rule 12(e) provides in pertinent part that "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading."  Fed. R. Civ. P. 12(e).  Here, OSJL cannot possibly frame a responsive pleading because it has not been put on adequate notice of the nature of the claims levied against it under Rhode Island, Maine, New Hampshire, Vermont, Massachusetts, Connecticut, and New Jersey law.  See, e.g., Wallett v. Anderson, 198 F.R.D. 20, 25 (D. Conn. 2000) (granting motion for more definite statement with respect to complaint which alluded cause of action for emotional distress, but did not allege such claim or state law cause of action).  Rule 12(e) also directs the moving defendant to "point out the defects complained of and the details desired."  Fed. R. Civ. P. 12(e).  Accordingly, to the extent this Court does not dismiss Plaintiff's Complaint in its entirety, OSJL asks this Court require Plaintiff to identify the particular statutory provisions of Rhode Island, Maine, New Hampshire, Vermont,

Massachusetts, Connecticut, and New Jersey under which he seeks to hold OSJL liable and, with respect to each, link OSJL's alleged actions to the elements of those causes of action.

## **CONCLUSION**

WHEREFORE, for the reasons set forth above, OSJL respectfully requests that this Honorable Court dismiss the Complaint in its entirety for failure to state a claim upon which relief can be granted.

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of September, 2017, I caused a true and correct copy of the foregoing document to be served on all counsel of record by operation of the Court's Electronic Case Filing System.

*/s/ Kenneth Costa*
Kenneth Costa
