UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| KEVIN STEWART on behalf of himself and all others similarly situated,<br>　　Plaintiff,<br><br>　　v.<br><br>OCEAN STATE JOBBERS, INC., ET AL.,<br>　　Defendants. | CIVIL ACTION NO.<br>3:17-CV-1266 (JCH)<br><br><br>JANUARY 10, 2018 |

**RULING RE: MOTION TO DISMISS (DOC. NO. 16)**

This case comes before the court pursuant to a putative class action Complaint ("Compl.") (Doc. No. 1) filed by Kevin Stewart ("Stewart") on July 28, 2017. Stewart alleges that the defendant, Ocean State Jobbers, Inc., d/b/a Ocean State Job Lot ("Ocean State"), sold Duracell batteries that were intended for the Asian market in its stores in the northeastern United States. On the basis of these allegations, Stewart alleges violations of consumer protection statutes in New York, Rhode Island, Maine, New Hampshire, Vermont, Massachusetts, Connecticut, and New Jersey. See Compl. at 14, 16.

On September 11, 2017, Ocean State filed a Motion to Dismiss (Doc. No. 16) pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that, with respect to the New York consumer protection claims, Stewart has failed to adequately allege that the packaging in question was materially misleading, or that he was materially misled by it. See Memorandum of Law in Support of Motion to Dismiss ("Def.'s Mem.") (Doc. No. 17) at 8–11. Ocean State further argues that Stewart lacks standing to bring claims pursuant to the consumer protection statutes of Rhode Island, Maine, New Hampshire, Vermont, Massachusetts, Connecticut, and New Jersey. Id. at 11–14. In the

1

alternative, Ocean State moved for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e).  Motion to Dismiss at 1.

For the reasons that follow, Ocean State's Motion to Dismiss (Doc. No. 16) is granted.  Stewart is granted leave to replead within twenty-one days of this Ruling.

**I.  LEGAL STANDARD**

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must determine whether the plaintiff has stated a legally cognizable claim by making allegations that, if true, would show that the plaintiff is entitled to relief.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007) (interpreting Rule 12(b)(6), in accordance with Rule 8(a)(2), to require allegations with "enough heft to 'sho[w] that the pleader is entitled to relief" (alteration in original)).  The court takes all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor.  Crawford v. Cuomo, 796 F.3d 252, 256 (2d Cir. 2015).  However, the tenet that a court must accept a complaint's allegations as true is inapplicable to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).

To survive a motion pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Twombly, 550 U.S. at 556).

## II.     FACTS[1]

The facts alleged in this case are straightforward.  The defendant, Ocean State, is a Rhode Island corporation with 127 retail stores located throughout the northeastern United States.  Compl. at ¶¶ 1, 16.  Stewart, a resident of New York, purchased a two-pack of Duracell C alkaline batteries, a four-pack of Duracell AA alkaline batteries, and a four-pack of Duracell AAA alkaline batteries from a New York Ocean State location.  Id. at ¶¶ 14, 15.  The packaging for these batteries included an image of a pink bunny, and the advertising claims "LASTS LONGER . . . MUCH LONGER" and "UP TO 6X LONGER LASTING POWER."  Id. at ¶ 3.  Stewart made this purchase based on his belief that Duracell batteries are "a top notch, top quality consumer product."  Id. at ¶ 15.  When he purchased the batteries, Stewart believed that they were high quality Duracell alkaline batteries intended for the United States market.  Id. at ¶ 25.  He paid a premium price for the batteries.  Id.  After making the purchase, Stewart learned that Duracell intended the batteries he had purchased for the Asian market, not the United States market.  Id. at ¶¶ 4, 15.  Had Stewart known that the batteries in question were intended for sale on the Asian market, he would not have purchased them.  Id.

## III.     ANALYSIS

### A.     New York Law Claims

In his Complaint, Stewart alleges that Ocean State violated two sections of New York General Business Law: section 349, which prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in

---

[1] In deciding a Rule 12(b)(6) motion to dismiss, the court accepts all factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor.  Crawford v. Cuomo, 796 F.3d 252, 256 (2d Cir. 2015).

this state," and section 350, which prohibits "[f]alse advertising in the conduct of any business, trade or commerce in the furnishing of any service in this state." The New York Court of Appeals has held that "[t]he standard for recovery under General Business Law § 350, while specific to false advertising, is otherwise identical to section 349." Goshen v. Mut. Life Ins. Co. of N.Y., 98 N.Y.2d 314, 324 n.1 (2002). In order to prove liability under either section 349 or section 350, therefore, a plaintiff must prove the same three elements: "first, that the challenged act or practice was consumer-oriented; second, that is was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." New World Sols., Inc. v. NameMedia Inc., 150 F. Supp. 3d 287, 329 (S.D.N.Y. 2015) (quoting Stutman v. Chem. Bank, 731 N.E.2d 608, 611 (N.Y. 2000).

Ocean State does not dispute that the first factor, namely that the challenged practice was "consumer-oriented," has been adequately pled. However, Ocean State argues that Stewart has not plausibly alleged that the battery packaging in question was "misleading in a material way" because, first, Stewart has not alleged that the batteries are of inferior quality and, second, because Stewart has provided "no plausible basis from which to infer that the subject advertising claims are not equally true for U.S. markets" as they are for Asian markets. Def.'s Mem. at 8–9. Ocean State further argues that the statements in question, that the batteries "LAST LONGER . . . MUCH LONGER" and have "UP TO 6X LONGER LASTING POWER," are not materially misleading because they constitute non-actionable puffery. Id. at 10.

The court agrees with Ocean State that the representations on the packages— that the batteries "LAST LONGER . . . MUCH LONGER" and have "UP TO 6X LONGER

4

LASTING POWER"—are not materially misleading as a matter of law because they constitute "mere puffery." See id. The Second Circuit has defined puffery in an advertising context as "subjective claims about products, which cannot be proven either true or false." Time Warner Cable, Inc. v. DIRECTV, Inc., 497 F.3d 144, 159 (2d Cir. 2007) (quoting Lipton v. Nature Co., 71 F.3d 464, 474 (2d Cir. 1995)). The Second Circuit has further cited with approval the Fifth Circuit's definition of puffery as "an exaggerated, blustering, and boasting statement upon which no reasonable buyer would be justified in relying." Id. at 160 (quoting Pizza Hut, Inc. v. Papa John's Int'l, Inc., 227 F.3d 489, 497 (5th Cir. 2000)). With respect to the claim that the Duracell batteries "LAST[ ] LONGER . . . MUCH LONGER," the court concludes this statement is puffery: it is a vague, boastful statement which, in the absence of a point of comparison,[2] cannot be proven true or false, and a reasonable buyer would not be misled by it. See, e.g., Ostreicher v. Alienware Corp., 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008) ("'[H]igher performance,' 'longer battery life,' 'richer multimedia experience,' [and] 'faster access to data' are all non-actionable puffery.").

With respect to the claim that the batteries have "UP TO 6X LONGER LASTING

---

[2] On the issue of whether this claim contains a point of comparison, Ocean State argues that, on the packaging at issue, the phrase "LASTS LONGER . . . MUCH LONGER" is followed by an asterisk, which states "vs. ordinary zinc carbon batteries." See Def.'s Mem. at 5. Ocean State cites the court to the Complaint filed by Duracell in case number 3:17-cv-1199 (JCH). See Def.'s Mem, Exh. A (Doc. No. 17-1) at 8–9. Stewart, however, failed to disclose this disclaimer to the court in his Complaint, while nevertheless making much of the fact that the advertising claims were intended as a comparison to the Asian market "where they compete against lesser quality, lower performance, and shorter-lived zinc carbon batteries." Compl. at ¶ 15. Because the court concludes that the advertising claims in question are non-actionable puffery even in the absence of such a disclaimer, the court need not take judicial notice of the packaging. However, the court notes for the purposes of repleading that, if the packaging in question does contain a relevant disclaimer, Stewart should bear in mind the Second Circuit's view that "[a] plaintiff who alleges that he was deceived by an advertisement may not misquote or misleadingly excerpt the language of the advertisement in his pleadings and expect his action to survive a motion to dismiss or, indeed, to escape admonishment." Fink v. Time Warner Cable, 714 F.3d 739, 742 (2d Cir. 2013).

5

POWER," the Second Circuit recently addressed comparable advertising language and concluded that dismissal of a section 349 claim was proper because, "as the District Court unassailably concluded, the phrase 'up to' would lead a reasonable consumer to expect that speeds could be less than the advertised '3x faster' and '100x faster' speeds." Fink v. Time Warner Cable, 714 F.3d 739, 742 n.3 (2d Cir. 2013). See also Serrano v. Cablevision Sys. Corp., 863 F. Supp. 2d 157, 167–68 (E.D.N.Y. 2012) (claim that internet speed was "up to 5x faster" was puffery).

Stewart does not argue that the advertising claims in question are materially misleading, or cite the court to any authority that would support such an argument. Instead, Stewart argues that whether a claim is materially misleading is typically a fact question for the jury. See Plaintiff's Response to Motion to Dismiss ("Pl.'s Response") (Doc. No. 29) at 10 n.2. It is well settled, however, that whether a claim or omission is materially misleading "may be determined as a matter of law or fact (as individual cases require)." Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 26 (1995). The cases to which Stewart cites, which are merely examples of cases in which the question was properly reserved for the jury, are not to the contrary. In this case, given the Second Circuit's recent holding that similar language was puffery at the motion to dismiss stage, the court concludes that the advertising claims at issue are puffery as a matter of law.

Stewart also asserts that Ocean State omitted a material fact about the batteries, namely that they were intended for the Asian market. Compl. at ¶¶ 15, 24. Material omissions are actionable under sections 349 and 350. See Oswego, 85 N.Y.2d at 26. However, the alleged fact that the batteries were intended by Duracell for the Asian

market does not constitute a material omission where, as here, the plaintiff has not pled that the Asian-market batteries are inferior to those intended for the United States market. See id. (noting that not every omission is material: section 349 "surely does not require businesses to ascertain consumers' individual needs and guarantee that each consumer has all relevant information specific to its situation"). Instead of describing any specific problems with the batteries in question, Stewart repeatedly states that the Asian-market batteries are "materially different" from batteries intended for the United States market. See Compl. at ¶ 8 (quoting 3:17-cv-1199, Complaint (Doc. No. 1)); see also Pl.'s Response at 1, 3, 6, 9, 10, 11. This statement is both vague and equivocal: it is neither clear how the batteries are different nor whether those differences are bad. At the same time, Stewart—who purchased several packages of the batteries in question––has not alleged that the batteries did not last as long as other Duracell batteries he has purchased, or that he has experienced any other problems with them.

In his Response, Stewart asserts that he has adequately pled that the batteries are inferior by alleging that he believed he was "purchasing authentic Duracell alkaline batteries manufactured to the specifications, quality, and performance standard of the U.S. market when, in fact, [he was] not." Id. at 9 (quoting Compl. at ¶¶ 39, 48). Contrary to Stewart's assertions, however, this does not amount to pleading that the batteries he purchased were of inferior quality. What this allegation amounts to is a statement that the batteries were intended for the Asian market, so they "may perform differently." Compl. at ¶ 4 (emphasis added). The possibility that the batteries are inferior is insufficient to withstand the Motion to Dismiss. See Iqbal, 556 U.S. at 678 ("The plausibility standard . . . asks for more than a sheer possibility that a defendant

7

has acted unlawfully.").

Stewart repeatedly cites the court to the existence of a lawsuit brought by Duracell against Ocean State arising out of the same sale of Asian-market batteries. If the batteries were not of lower quality, the argument goes, then why would Duracell make a federal case out of it? See Pl.'s Response (Doc. No. 29) at 9–10 ("[I]n multiple federal court pleadings, Duracell, the manufacturer of the batteries, has made this very claim [that the batteries are materially different] . . . ."). Even if the court were inclined to credit unsworn allegations in a complaint in a different pending lawsuit, which it is not, the fact that Duracell describes the Asian-market batteries as "materially different" in its complaint does not mean that the batteries are materially *worse*. A bare allegation that the differences are "material" is not sufficient to plausibly assert that Ocean State was obligated to inform customers of that the batteries were intended for the Asian market.

Stewart also argues that the batteries were so inexpensive that they must have been inferior. Pl.'s Response at 3 ("What Ocean State charges for its [Asian market] products provides additional evidence of the materially different nature of these products."); id. at 11 (citing the "steeply discounted prices offered by Ocean State" as support for the argument that "Ocean State is selling a materially different product than what consumers thought they were getting"). This argument is hard to reconcile with Stewart's allegations in both his Complaint and his Response to the Motion to Dismiss that he "paid a premium" to Ocean State for the Duracell batteries. See Compl. at ¶¶ 15, 25, 26, 27; Pl.'s Response at 6. Even assuming the inexpensive nature of the batteries supports the argument that they are inferior, however, the Complaint is devoid of any assertions about the price of the batteries except that Stewart paid a "premium

price" for them, which hardly indicates that the batteries were so cheap that they must have been inferior.[3]  Because Stewart failed to allege that the batteries were "steeply discounted" in his Complaint, the court cannot rely on that argument for the purposes of ruling on the Motion to Dismiss.

For the foregoing reasons, Ocean State's Motion to Dismiss (Doc. No. 16) is granted with respect to Stewart's New York law claims.  Stewart may replead these claims within thirty days.

      B.    <u>Claims Pursuant to the Laws of Rhode Island, Maine, New Hampshire, Vermont, Massachusetts, Connecticut, or New Jersey</u>

In his Complaint, Stewart alleges violations of New York Business Law sections 349 and 350 "and the Substantially Similar Laws of the States of Rhode Island, Maine, New Hampshire, Vermont, Massachusetts, Connecticut, and New Jersey." Compl. at 14, 16.  Stewart does not identify which laws of these states he pleads under, and, as Ocean State has illustrated, the elements of the consumer protection statutes in the referenced states vary.  <u>See</u> Def.'s Mem. at 16–24.  However, the court need not—and in fact, ought not—reach the question of whether Stewart has adequately pled violations of the consumer protection statutes of Rhode Island, Maine, New Hampshire, Vermont, Massachusetts, Connecticut, and New Jersey, because the court concludes that Stewart does not have standing to assert these claims.  <u>Warth v. Seldin</u>, 422 U.S. 490, 498 (1975) ("[S]tanding imports justiciability . . . [it] is the threshold question in

---

[3] The court notes that, if it adopted Stewart's argument that the batteries were priced so cheaply that "the only rational explanation" was that the products were materially different, see Plaintiff's Response at 11, it would be logical for the court to further conclude that no reasonable consumer would be misled by the omission in question.  In other words, it might help Stewart to show materiality, while hurting his claim that he was misled.  Because Stewart did not adequately plead these allegations in his Complaint, however, the court does not reach the merits of this argument.

9

every federal case, determining the power of the court to entertain the suit.").

Article III, Section 2 of the U.S. Constitution limits the jurisdiction of the federal courts to the resolution of cases and controversies. See, e.g., Mahon v. Ticor Title Ins. Co., 683 F.3d 59, 62 (2d Cir.2012). "In order to ensure that this 'bedrock' case-or-controversy requirement is met, courts require that plaintiffs establish their 'standing' as 'the proper part[ies] to bring' suit." W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP, 549 F.3d 100, 106 (2d Cir. 2008) (citation omitted) (alteration in original). To have standing, "a plaintiff must demonstrate (1) a personal injury in fact (2) that the challenged conduct of the defendant caused and (3) which a favorable decision will likely redress." Mahon, 683 F.3d at 62; see Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992).

Stewart argues that standing questions should be deferred to the class certification stage because, if a class is certified, standing requirements will be satisfied. See Pl.'s Response at 12–15. Stewart asserts that class certification in this case is "logically antecedent" to determination of standing in this case, and cites the court to a wealth of authority demonstrating that logical antecedence is an exception to the standing requirement. Id. The logical antecedence exception applies when "class certification is the source of the potential standing problems." In re Digital Music Antitrust Litig., 812 F. Supp. 2d 390, 406 (S.D.N.Y. 2011). However, in Mahon, the Second Circuit made clear that logical antecedence is a narrow exception, which applies only where "resolution of class certification obviates the need to decide issues of Article III standing" and does not "instruct[ ] courts to always treat class certification first and to treat the class as the relevant entity for Article III purposes." Mahon, 683 F.3d at

10

65. To defer existing standing problems to the stage of class certification would impermissibly allow the class certification rule, Federal Rule of Civil Procedure 23, to "alter a constitutional requirement." Id. at 64.

The Second Circuit has not directly addressed whether claims pursuant to state laws other than those for which the named plaintiff or plaintiffs in a putative class action have standing to sue may be preserved at the pleading stage. Lower courts in this Circuit are divided on the question. See, e.g., In re: Propranolol Antitrust Litig., 249 F. Supp. 3d 712, 726–27 (S.D.N.Y. 2017) (recognizing disagreement and collecting cases). On facts similar, in relevant part, to those presented in this case, other courts in this District have concluded that claims must be dismissed for lack of Article III standing, rather than deferring to the class certification stage. For example, in Edwards v. North American Power & Gas, LLC, the plaintiff alleged claims against an electric company arising under the laws of Connecticut—the plaintiff's state of residence—as well as the consumer protection statutes of New Hampshire, Maine, and Rhode Island. 120 F. Supp. 3d 132 (D. Conn. 2015) (VAB). The Edwards court concluded that the Connecticut claims could go forward, but the claims under New Hampshire, Maine, and Rhode Island law could not. Id. at 139. The Edwards court reasoned that while the plaintiff alleged that the electric company had harmed consumers in other states, "he does not claim that he subscribed personally to the plan in any of those states." Id. "Absent this allegation," the court concluded, Edwards "has failed to plead that [the defendant's] conduct in any state other than Connecticut impacted him 'in a personal and individual way,' which is required for the injury-in-fact aspect of standing." Id. (quoting Lujan, 504 U.S. at 560 n.1).

Similarly, in In re Aggrenox Antitrust Litigation, another District of Connecticut case, the court was presented with a putative class action in which, as here, "[s]ome of the claims of absent class members are brought under entirely different laws, and the laws of entirely different states, from the claims of the named plaintiffs." 94 F.Supp.3d 224, 249–51 (D.Conn. 2015) (SRU). Although recognizing that "the allegedly unlawful conduct is the same, and the different states' laws are versions of the same laws, or at least analogous laws that share essential elements," the Aggrenox court nevertheless dismissed the out-of-state claims based on Mahon's holding that, "with respect to each asserted claim, a plaintiff must always have suffered a distinct and palpable injury to herself." Id. at 251 (quoting Mahon, 683 F.3d at 64) (emphasis in original).

Stewart has not alleged that he suffered an injury-in-fact in Rhode Island, Maine, New Hampshire, Vermont, Massachusetts, Connecticut, or New Jersey, because he did not purchase Duracell batteries intended for the Asian market in those states. Thus, he has failed to plead that he has standing to bring claims under the consumer protection statutes of those states. See In re HSBC Bank, USA, N.A., Debit Card Overdraft Fee Litig., 1 F. Supp. 3d 34, 50 (E.D.N.Y. 2014) (finding that a plaintiff lacks standing to bring claims on behalf of a class "under state laws to which Plaintiff [sic] have not been subjected"), reconsidered on other grounds, 14 F.Supp.3d 99 (E.D.N.Y.2014); see also Mantikas v. Kellogg Co., No. 16-CV-2552(SJF)(AYS), 2017 WL 2371183, at *7 (E.D.N.Y. May 31, 2017) ("[A]n 'attempt to invoke the laws of [other states], based on the fact that the defendants make sales in those states or are headquartered there, lack[s] merit." (quoting Mosely v. Vitalize Labs, No. 13-CV-2470(RJD)(RLM), 2015 WL 5022635, at *8 (E.D.N.Y. 2015))).

As to the cases Stewart cites to support his position, those cases are either distinguishable or unpersuasive. In Saphirstein v. Mauzone Mania, LLC, for example, the plaintiffs brought claims pursuant to New York Business Law sections 349 and 350 and common law fraud claims in a complaint styled as a nationwide class action complaint. No. 15-cv-7264, 2017 WL 3278893, at *4 (E.D.N.Y. July 31, 2017). The Saphirstein court considered the defendants' arguments that a nationwide class could not bring claims pursuant to New York Business Law sections 349 and 350, and that litigating common law fraud claims brought by a nationwide class "would become unmanageable," and concluded that "[b]oth of these issues relate to class certification and should be deferred to the class certification stage when the record is more fully developed." Id. Thus, the Saphirstein court was essentially facing the opposite situation of this court: instead of Stewart's pleading claims for which he has no standing but the entire class might, the Saphirstein plaintiffs pled claims for which they had standing but the entire class might not. In contrast to this case, the Saphirstein complaint was a proper candidate for the logical antecedence exception because the named plaintiffs had standing, and the court could determine at the class certification stage whether the class had standing as well. See also Reid v. GMC Skin Care USA Inc., No. 8:15-cv-277, 2016 WL 403497, at *8 (N.D.N.Y. Jan. 15, 2016) (standing challenge made as to class, not named plaintiffs); Clarizia v. Ocwen Fin. Corp., No. 1:13-cv-2907, 2016 WL 439018, at *9 (S.D.N.Y. Feb. 2, 2016) (same).

Admittedly, some courts in this Circuit have reached the outcome that Stewart urges this court to reach. See, e.g., Kaatz v. Hyland's Inc., No. 16-cv-237 (VB), 2016 WL 3676697, at *4 (S.D.N.Y. July 5, 2016) ("Named plaintiffs in a putative consumer

13

protection class action may assert claims under laws of states where they do not reside to 'preserve those claims in anticipation of eventually being joined by class members who do reside in the states for which claims have been asserted.'" (quoting Blessing v. Sirius XM Radio Inc., 756 F. Supp. 2d 445, 452 (S.D.N.Y. 2010)); see also Blessing, 756 F. Supp. 2d at 451 (collecting cases). However, this court concludes that these opinions, many of which predate Mahon, are not consistent with the Second Circuit's reasoning in Mahon or the principle that Article III standing is a threshold issue. See In re: Propranolol Antitrust Litig., 249 F. Supp. 3d at 727 (dismissing claims under other states' laws because "in 'a class action, a court must analyze the injuries allegedly suffered by the named plaintiffs, not unnamed members of the potential class, to determine whether the plaintiffs have Article III standing" (quoting Vigil v. Take-Two Interactive Software, Inc., No. 15-cv-8211 (JGK), 235 F. Supp. 3d 499, 508, 2017 WL 398404, at *6 (S.D.N.Y. Jan. 30, 2017))). The court therefore concludes that the opinions which reach the opposite conclusion, including Edwards, In re Aggrenox, and In re: Propranolol, are better reasoned.

In sum, that Stewart intends to seek class certification at some point during this lawsuit does not relieve him of the burden of pleading facts that show he has standing with respect to all claims in his Complaint.[4] See Lewis v. Casey, 518 U.S. 343, 357

---

[4] Stewart also argues in his Response that he should be exempted from stating a plausible claim under the laws of states other than New York prior to class certification. Pl.'s Response at 17 ("[T]he Court should . . . defer ruling on whether Plaintiff can state a claim under the laws of Connecticut, Massachusetts, Rhode Island, Vermont, New Hampshire, and Maine" as "this issue will only become relevant when a class is certified"). The plaintiff has cited the court to no authority for this suggestion, and the court is aware of none. To the contrary, the court is obligated to dismiss claims that have not been plausibly alleged. See Iqbal, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (emphasis added)); see also Fed. R. Civ. P. 8(a) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . .").

14

(1996) ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.") (quoting Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 40 n.20 (1976))). Because Stewart fails to meet that burden at this time, the claims under Rhode Island, Maine, New Hampshire, Vermont, Massachusetts, Connecticut, and New Jersey law must be dismissed.

## IV. CONCLUSION

For the reasons described above, Ocean State's Motion to Dismiss (Doc. No. 16) is granted in its entirety. In light of this Ruling, Ocean State's alternative Motion for a More Definite Statement is denied. Stewart may replead within twenty-one (21) days of the date of this Ruling.

**SO ORDERED**.

Dated this 10th day of January, 2018, at New Haven, Connecticut.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge